Here the Miss Honorable Appellate Court for the 2nd Judicial District is now back in session. The Honorable Anne B. Jorgensen presiding. Please be seated. Your Honor, the second case on the docket this morning is 2-22-0314, entering the marriage of Paul Herring, Petitioner Appellate, and Tracy Herring, Respondent's Appellee. Arguing on behalf of the Appellant, Mr. Michael A. Wyman. Arguing on behalf of the Appellee, Mr. David Del Rey. Are you both ready to proceed? Yes. Then counsel when you're ready. Good morning. If it may please the Court, it's a pleasure to be here. This is a domestic relations matter that I'm sure your Honors are all well versed in. A post-decree domestic relations matter. And it's a question that I believe emanates from jurisdiction of the trial court in this post-decree matter. And I think the challenges faced by the trial court were because of the unique nature of it. From a domestic relations perspective, a motion to reform is a unique animal. Not many domestic relations courts are faced with presentment of a motion to reform a marital settlement agreement under circumstances such as this. As the facts depict, and I'm sure the panel is well versed, this all revolves around certain accounts that were established during the course of marriage, during the party's marriage, with marital funds and were unquestioning marital property as viewed by both parties. Let me get something straight. This motion to reform was filed after there was a rule to show cause against the husband for not paying Loyola, correct? Yes. And the reason it was filed was because that affirmative defense needed to be raised to the issues that were presented, as the court, I'm sure, is well familiar with. Section 513 was modified in 2016 and 2017. And a variety of what I would call limiting terms were incorporated into it, which were adopted in the party's marital settlement agreement. The limitation to costs unless good cause shown for only the University of Illinois or Urbana-Champaign. And what I would call the skin-in-the-game provision, that a child now had a statutory obligation to be able to seek a contribution or have 513 jurisdiction vested in the court by establishing that they were full-time students in good standing, maintaining a C average. Up until they're 23 years old. I don't believe so, Your Honor. I think that if a child fails out of school at 18 and 19 years old, that there's nothing that is in the statute or any authority that says that. Isn't there something in the marital settlement agreement that says something about 23 years old? Am I reading that wrong? That's what I'm saying. Except that because it's one of the conditions precedent to the obligation, it's separate and distinct, Your Honor, because within section the party's marital settlement agreement, which adopts subsection G, it says that the parties have an obligation, yes, until age 23, but there are other terminating events which can occur earlier. And when the 2016 and 2017 provisions went into place, they eliminated some terminating factors. Incarceration, as you have from the Baumgarten case, going and being in the military service. Here, the Illinois legislature changed what were going to be the terminating events. And turning 23 and maintaining a C average were separate and distinct conditions precedent. And if a child now elects not to go to school or they fail out of school, which is the situation in this case, once that condition precedent occurs, it terminates the jurisdiction of the court to enter any orders under section 513. There's no authority for the proposition except where good cause is shown. And the arguments that were raised as an affirmative defense on the motion were, first, there is no good cause shown here. There is no justifying reason why that terminating event should be held in place. And thus, the trial court's jurisdiction to allocate college education expenses and order the parties to contribute per 513 was gone. It's clear that the Illinois legislature tried to establish that if a child did not evidence an acumen and ability to be a full-time college student, that that was a basis for the court to determine that there was no longer a duty of the parents under 513. And the parties... What about the 23-year-old age in there? Was that in there by statute or was that by agreement of the parties? The parties' agreement essentially adopted it. But the 23 is separate and distinct from failure to do it. And the question falls within the motion of reform. There were well-pledged facts that were presented to the trial court that, in fact, those terminating events had occurred. There were transcripts that were tendered which showed for the eldest child, he had completely abandoned his college education one semester at Carthage College, enrolled at CLC, and then never went back. And the other child failed to maintain it. Also within the four corners of the motion of reform that was presented was established that the parties had made a mutual mistake. But the wife doesn't agree that she made a mutual mistake. I understand that she doesn't agree, but... Isn't that the very definition of a mutual mistake? I believe that once we are allowed to get to an evidentiary hearing and present the evidence, that the evidence will establish that just because the wife doesn't agree that there was a mutual mistake, that there was clearly based upon the marital settlement agreement a mutual mistake. The parties didn't incorporate dispositive terms as to what was to happen in the event that there wasn't a 513 obligation, which is what was alleged within our motion to reform. And that now, because of that, there is a newly discovered, essentially a newly created marital asset being these remaining funds. Well, the children are the beneficiaries of the funds, correct? The funds pursuant to the parties' marital settlement agreement were for the purpose of fulfilling the parties' 513 obligation. And that goes to the distinction of the parties' marital settlement agreement from 513. As 513 was modified, that the court in a contested proceeding, a trial court, is to say that that's the obligation, the funds of the child. The parties exempted that in this matter. In this case, it's clear from the parties' marital settlement agreement that those 513 funds were to go to satisfy their obligation before they would be obligated out of their own pocket. Ostensibly, my client Moore is acknowledged in the marital settlement agreement before that could happen. Well, with those Bright Star or these types of accounts, there are different tax benefits, isn't that correct? Different tax benefits in that they grow tax-free. Correct. So then if the father says, oh, I'm going to take the Bright Star account,  there's a different tax ramification, is there not? That assumes that a taxable event would occur. Well, any accession of wealth is a tax event. Any accession of wealth is a tax event, isn't it? Not within the confines of a 529 account. A Section 529 account could be used by either party to facilitate their continuing education, and it could be used for other family members of either party. They don't have any other family members, do they? Just those two kids. My client is remarried. My client has children from a fashion base. My client has children that are adopted from a second marriage he has. So there are scenarios in which there would be no taxable event that occurred here. But with regards to the trial courts act. But there clearly would be scenarios where there would be a taxable event, correct? If either party took the affirmative action to use the funds for a non-educational purpose after they were divided between the two of them, yes. But if either party decided, there's nothing that we are arguing that says that although the parties don't have 513 liability, that if Ms. Hiller decides that she wants to take her 55% voluntarily, not quote Section 513, and give it to one of the children, the other of the children, use it herself or liquidate it, that's her disposition to do so. And we're not seeking to modify the terms of the party's marital settlement agreement. And I think that relates to the three points on appeal that I think require the greatest argument. What's the difference between what you propose is the original agreement and the writing, the marital settlement agreement? I believe that the marital settlement agreement is devoid of any dispositive terms of what should happen with these funds. There's no specific terms. What's the difference? Because you left something out. It's not the same as I agreed to A but put B in. I agreed to A, put A in, and now I have a new idea. In other words, in reformation, here was what we agreed to, but here's what's in the writing. And so my question to you is, what is the difference between what they purportedly agreed to in 2017 in May and what you're saying now? That supplemental orders need to be entered that say that these are marital assets, which are to be divided 55-45. Counselor, I appreciate your answer, but my question is, what is the difference? Not what was left out, but what is the difference between what they agreed to then and what is in this writing? I don't think that there's anything different between. Doesn't that defeat your attempt to reform? I don't think it does at all. And the answer is this, is because like any other asset which wasn't recognized to exist at the time of the party's disillusion, in order for the trial court to enter a full and final judgment under Section 514, all assets need to be allocated and apportioned between the parties. And in this situation, we allege it would be the same if the child was deceased before they finished their college education, the child had gotten a full scholarship, the child had decided to say, I'm not going to go to college, I don't want to go to college, I'm never going to go to college. Under all of those circumstances, you would have remaining dormant funds that would be sitting there. I have never seen a merely settlement agreement that says what happens with the funds if the kids don't go to college. Have you? I have, but you're absolutely right, Judge. It's rare because people operate under the belief that their children are going to matriculate through college. Nobody signs a 529 account without the belief, all that money is going to go to put my kid through college and then I'm going to use those funds. I agree with you. And so maybe perhaps you're premature in this motion. Well, in light of the fact that the motion, the Maryland settlement agreement does say 23, and a lot of times kids' brains don't mature until a certain age. So perhaps you're premature on this? What I don't believe you're premature, Judge, is because if the child simply didn't go to school after completing high school. Does it say that in here, that it only applies if you go straight to college and stay there for four years with a C average? It doesn't, but what it does is this, the distinction is there. I agree with Justice Schrosack that there are scientific studies which show that the human brain matures and grows and that some children aren't ready, okay? But in this situation, the child started school, the child went to school, and the child failed to maintain standing as having a C average. And because that event occurred, it was a termination event. And because that termination event occurred, there was no more authority for the trial court to order 513 contribution, both pursuant to Section G of the statute and the parties' merit of settlement agreement. So once that event occurred, you have this money that's sitting there, okay, that is no longer the parties contemplated they were going to have a 513 obligation, that these funds were going to do it. Nobody wants to contemplate the events that hurt. It's very simple. Even if we buy your argument that there was nothing set out with respect to how these funds would be distributed after they weren't used, even if we accept that argument, how is this not res judicata? Because the trial courts never contemplated, and there's no more merit of settlement agreement that says, what's supposed to happen with the residue, okay? We have residue now. Isn't res judicata not only what was decided but what could have been? So it could have been decided what to do with the residue, as you've called it. The parties made a mutual mistake by failing to consider what to do with the residue. There's no dispositive terms. You have funds that are sitting there now. How much are the funds? I don't know the present balances, but the balances which existed at the time were approximately $72,000 to $75,000 per child. You mean in 2017? At the time of the entry judgment. So you don't know what's left? I don't. But I do know this. There have been distributions that have been made for the college before Alexander failed out and before Sebastian failed to maintain a C average. So there have been withdrawals for that purpose, correct? Mm-hmm. So I do believe this, that the parties, our motion to reform clearly set forth a claim of mutual mistake of fact, laid forth all well-plaid facts of a cause of action for reformation. There are no provisions within the marital settlement agreement that are dispositive, that would trigger a 2-6-19-4, that the judgment controls. There is no language that we can refer to and say, okay, the funds aren't used for his college education because he's failed out and he's abandoned his education. This is what's supposed to happen to the money. With regards to the two arguments that are brought under 2-6-19, with regards to the first argument, as it relates to the terms of the marital settlement agreement, there is nothing within the marital settlement agreement that controls what is to happen with those funds. Justice McLaren, do you have any additional questions? Yes, I do. Thank you. Counsel, this was a petition to reform the contract for the MSA, is that correct? Yes, it is a contract. And under 2-14-01, does 2-14-01 allow for reformation or does it merely allow the vacation of prior judgments? 2-14-01, as we said to the authority, provides for all of it. It's all-encompassing. It provides for modification, it provides for vacature, it provides for reformation. That is the statute under which a motion to reform is to be brought under. Is it listed in the statute that it's supposed to be filed under 2-14-01? There is case law authority, if I may judge, which we brought to the trial court's attention within the motion to reform that a petition brought under 2-14-01 constitutes proper grounds to reform a divorce decree that fails to express the true intent of the parties on account of mutual mistake. And we cite the 4th District case of Johnson and the 1st District case of Shainer. I have no further questions. I have nothing further. Thank you. Counsel, you will have an opportunity to reply. Thank you. Counsel, when you're ready. Good morning. David Delray on behalf of Tracy Heron, the appellee who is present in open court. I want to get right to the focus of your questions, if I may. This has never been, it is not, it is not a 513 case. There has never been a 513 petition asking either one of these parties to contribute to college-related expenses at the trial court level. That's very important to know. Because counsel says they are bringing a petition to enforce, also to reform. I'm not exactly sure what. Justice Shostak, you asked the first question. Wasn't your petition to reform brought in response to a petition for rule to show cause? Yes, it was. Here's what Ms. Heron was asking to enforce. Paragraph 5.3 of the marital settlement agreement is extremely important. It's one sentence, and it says, it contains one sentence that says this. These accounts shall be used towards the children's college expenses before either party is required to contribute pursuant to Section 513. That's on page 12 of the MSA, paragraph 5.3. I'm going to say it again. These accounts shall be used towards the children's college expenses before either party is required to contribute pursuant to Section 513. Now, if you look at the marital settlement agreement, and most importantly, the exhibit that is attached to it, that is the marital balance sheet. The marital balance sheet, exhibit A, first takes a look at the marital property, their assets, their debts. And what it does is it sets forth a total amount, assets minus liabilities, and it multiplies them by 55% for Tracy and 45% for Paul. In a separate, distinct category on the balance sheet, there are four lines. It's bold and in caps. Children's savings account. They are not part of the marital estate. We have not only the Breitstart for Alexander and Sebastian, each of them, but we have Harris Bank accounts for Alexander and Sebastian. Is the appellant, does he want, if there's any remaining, in the Harris Bank accounts right now? I assume not, but I think it's a similar argument. And then finally, right underneath that, we go to Paul's non-marital property. So these were the children's property. And as you know, they are the resources of the children. By a decision that this family made during the marriage and then reaffirmed in this marital settlement agreement. Now, why is that? Do you know the balance, Mr. Dallara? I absolutely do. At the time, it was approximately $140,000. $147,132. Correct. Currently, after the motion to strike and dismiss by the trial court was granted in August of 2022, an order was entered, not an agreed order, that said Paul Herring must take out of the 529 and repay Tracy Herring $29,000 for funds that she had voluntarily advanced. Because you'll see in the record, letter upon letter upon letter went to opposing counsel. Just distribute the funds. Sebastian is at Loyola. Sebastian has a 3.0. They refused to. The trial court ordered the $29,000 not only to be distributed directly to Tracy to repay her, but then in the same order, September 13th of 2022, ordered Paul Herring to pay $39,000 directly to Loyola. Now, why is that important with no one having ever filed a 513 petition? Because the way the marital settlement is written and the way the parties agreed, they don't have any liability for college until these funds are used up. As we stand here today, you might ask, what are we doing here? A, there's still funds in these accounts. B, we have a child in college right now, as we argue. The record is clear that he was in college at the time the trial court made its decision on a petition to reform. Justice Jorgensen, to your point about what is a mutual mistake, you said we talked about A, but we put in this agreement B. Where in the four corners of their petition to reform do they ever say this is what the actual agreement was? What this is is a well-disguised, hey, there's been a substantial change in circumstances. It's a well-disguised motion to modify, which is not allowed under the IMDMA, period. Because what he's saying is, and the case law says mutual mistake is not based on a bad prediction. It's not based on something that's hypothetically going to happen in the future. It's A7. Two parties come to an agreement, writing up an agreement that didn't incorporate A, as you mentioned, Justice Jorgensen. So, within the four corners, I thought the trial court made the right decision to grant it under either way's judicata, 619-1 or 9. I'm sorry, A4 or A9. How about 615, Mr. Del Rey? If we found that it could be dismissed under 2615, would we be able to do so, even though that wasn't really argued up here? Well, we did file a combined motion, we did, 615 and 619. And you did mention 2615 in your brief. That's right. And the trial court, in other words, you're asking, can they reclaim it? I imagine the court has discretion to have granted the 615. But I'm saying, and I think what the trial court meant, although we have no bystanders report, unfortunately, is that it wasn't right. And it was barred by race judicata, number one. And the affirmative matters, not only of A, we have a child still in college. B, there's still funds in these accounts. But C, most importantly, I think, you have not met the burden of pleading mutual mistake. It's a fiction. Let's face it. It just doesn't exist. Now, Justice McClaren, I do think the case law allows for, if you have the right set of facts and well pled, this 21401 is the vehicle to bring a petition to a forum. But I respectfully submit, not in this case. Justice Shostak, in city mortgage, you went through painstakingly what mutual mistake means and the five elements that have to be actually pled. They can't meet the first one, which Justice Jordansen, you said, is essentially A, the existence and substance of an agreement between the parties prior to entering the written agreement. It fails right there. We don't have to go. The analysis doesn't have to go any further. So respectfully, I think that the trial court made the right decision. And I think it actually should have been dismissed under 2619. What do you say about that 23-year age? That's a great question. So while we wrote in the marital settlement agreement, the exact language was 513, as it was at the time. And 513 says parents can be ordered to contribute only up until the 23rd birthday, absent a good cause shown. Right. The way this agreement was written, if there are still funds sitting in that account, and Sebastian is now 30, or Alexander is 35, and one of them wants to go to a tech school, or one of them wants to go to a culinary class, and there's still money in that account, they get to. So the parties, by their own device and creation, said we're not going to be bound by 513. Now, it would be totally different if there was no funds left in that account. They could not go to trade school at age 30. They can't go to cooking class at age 35. But the way it's written, they could. But if it's cut off at 23, they can't do it at 35, can they? No, the only thing that they can do is still use these funds in the 529. That's the only thing they can do. I agree with you. And then to your point, if this is granted, this motion to modify is really what Mr. Herring is saying, the appellant. Hey, we got $140,000 that we intentionally excluded from the marital estate, but now I want it. Maybe I have other kids that I adopted or whatever the case may be. He's trying to modify the marital settlement to say, hey, let's add $140,000 to which we didn't have at the time. It technically belonged to the children. And give it to us and then divide it 55-45. And I am sorry. The IAVMA says that is not allowed. I have one last question. You said Sebastian has a 3-0 at Loyola? Yes, that's part of the record. Are they still on a 4-0 scale? That I'm not sure. I'm pretty sure. I couldn't tell you. Let me put it this way. Yes. That's a B average. It's above a 2.0, which I believe would be the C average. Yes. I have no further questions, Mr. Dowery. Thank you. Justice McLaren? Yes. Does 214.01 have a statute of limitations? Well, that's a great question. I don't think you allege fraud. A mutual mistake can be either a mutual mistake on the part of both persons or a mistake on one that was induced by fraud. That's not the case here. But to answer your question, I think if there was an allegation of fraud that could be proven, I think they could file it really at any time. I don't think you're bound by the two-year statute. Well, that's the next question. Are they bound by the two-year statute? I think if you're not alleging fraud, yes, and they have not. What do you mean by res judicata? How does that apply if there never was a judgment on the issue? Well, I looked at it earlier. Yes, that's a great point. I looked at it under there is a judgment that they are trying to reform. So in that case, I agree with Judge Joyenson that it's anything that could have been decided as well, which clearly what to do with money that hypothetically, potentially in the future could be left over could have been addressed in the Merrill Settlement Agreement from 2017. And when did that judgment that the court ruled upon, when was that entered? 2017. Was it litigation based upon a pleading or was it some sort of decree of divorce or entry of the MSA? It was a judgment for dissolution of marriage that incorporated written Merrill Settlement Agreement. I'm having a little problem with the idea that if the res judicata aspects are based upon the filing of the divorce decree and its attachments, if that's res judicata, how could anybody attack what was in the divorce decree at any time thereafter unless it was void based upon fraud, lack of personal jurisdiction, or lack of subject matter jurisdiction? Well, I agree with you. I don't think the petition to reform is trying to vacate anything. It's trying to write in a provision that should have apparently existed. But I agree with you. I think the stronger arguments that were made to the trial court are under A9 of 2619. That is affirmative matters defeating the claim. Was there ever any litigation other than what you've described regarding the $29,000 or $39,000 that the husband was required to pay and the wife was given recompense for funds previously distributed? The September 13, 2022 order was the result of our filing a two competition that asked not only for her to be repaid for monies that she had voluntarily paid, but had multiple exhibits of letters going back and forth saying please just distribute this money. Because remember, the MSA and also in paragraph 5.3 says that they're joint custodians, that they both have access to the account, and that they both should receive statements. My client never received a statement until after we filed the petition for rule to show cause. She was not allowed to access it because obviously if she could access it, we wouldn't have been having to write the letters and bring the litigation. Paul Herring, the appellant, was the only one, because he wasn't complying with the judgment, that had access to it. So once the trial court ordered him to access it and repay, they also ordered on the same day to fund fall of 2022 as well, $39,000. That was the only litigation post-decree. How is that ratio to CADA in relation to things that happen on a timeline subsequent to that judgment? Can you say that again? I'm sorry. Are you raising race due to CADA with respect to the portion of the decree that he's trying to change, marital settlement agreement? You're not raising race due to CADA with respect to that September 22 hearing? Agreed. Agreed. That's right. I have no further questions. I'm sorry. Any other questions? Nor do I. Thank you, counsel. Thank you. Do you wish to reply? I appreciate the court's comments, and I want to give clarification. There's nothing that's sought to be modified or changed by way of the motion to reform, because changing or modifying would be a race due to CADA issue that would be subject to dismissal under 619-4. No. In fact, we're asking for the court to adopt the global proposal agreement of the 55-45 that was divided. How do you respond to that when he says there's a hidden college? Quite simply, I think you need to look at the whole record, because there was prior post-decree litigation. She brought a first petition that was in the prior 2021-2022 school year, and she said she wanted money then. And then we discovered that they had dropped out, that they weren't schooled, that they weren't students in good standing, and they withdrew the petition at that time. How about if they are right now? Right as we sit here right now, if there is a kid or two in school that is a student, does that make this move? No, I don't think it makes it move, because you asked about the 23, and I think that's where you need to dial down, Judge, and look at both the murder settlement agreement and subsection G of 513, which provide that there are actually four termination events. But no one's being asked to pay additional monies. Well, this is a question, unless I've completely missed the boat here, which does happen. What we're being asked to do is to say whether or not the money that has been set aside in this Bright Star account should be paid out to allow these kids to continue their education at least up until the age of 23. No one is saying, and again, unless I've missed something, you have to come up with new money to pay for education. I appreciate that, and it all emanates from 513. So you're saying these actions or these events have already occurred, thus the monies are no longer available to you. And thus the parties' obligations under 513 are terminated. And thus it would be as if the parties contemplated that they had a debt or liability when they were leaving the marriage, and they needed to allocate funds. Now, I understand it is unique because it's a 513, but that liability terminated. How do we also get around, excuse me, here's marital property, our debts, our assets, et cetera, et cetera, completely different category. Children's funds that we did not account for, nobody got a piece of. Here's the kids' savings account, and they have a Bright Star account under the topic of children's accounts. You have the conflict under 513 that the children can't be third-party beneficiaries. But isn't that clearly their intent to set this aside? Right, to set it aside to satisfy their 513 obligation, which ties in with the language of the marital settlement agreement that says that before they can be responsible under 513, these funds were to be exhausted because they were to go to satisfy their 513 obligation. So you're submitting that that obligation was satisfied when the kids weren't going to school. That obligation terminated under the language of the marital settlement agreement and the statute. If a child fails to uphold their obligation, and you asked about a 3.0, I understand that, but you also have in the appellate record that after his first semester at Loyola, he was less than a 2.0. And I do believe it is a 4.0, and I didn't go there, but I understand that at a 1.7, that's below the C average. So at that point, Gil was off. Unless good cause is shown. There is an exception. I'm not saying that. But unless, except in the event of illness or other good cause shown at one of the termination events. And once termination occurs, the obligation is extinguished for both of them. And as Russ said, if it was another debt where they had put money aside to satisfy it, and they found out they didn't have that liability, they were both wrong. Counsel, let me ask you this. If they had set money aside to pay off a car loan, and that loan is paid off, or let me put it this way, the loan becomes due, they get letters saying pay the loan, pay the loan, pay the loan, and the husband doesn't take the money that was set aside and send it to the guy who loaned you the money for the car, wouldn't we be in exactly the same position as we are here? I don't think that's analogous. If I may briefly just comment on it. I think it would be more analogous to a situation where parties own a piece of real estate, and they believe that there are environmental issues, and that they're going to have to incur some money to clean it up to sell it. So they decide, we're going to take money and put it aside to clean up that liability. And then they don't have that liability. But when they took that money aside to clean up that, they put it in somebody else's name, according to their marital settlement agreement. They didn't change the money. They put it in, I mean, that's what they put. So how do I come away, look at that, and conclude that there was a mutual mistake here, that they never intended that this money be set aside for these kids, for their education, however they choose to use it? Their mutual mistake, to conclude, was that they believed that their children would be students in good standing, who would complete a four-year education, that the funds were less than the cost of four years at the University of Illinois, and that their children would be students who showed an acumen, an ability, and a desire to pursue their education. And as we know from Sebastian, it's unrefuted. He has ceased going to college. You ask questions all about the monies. The money that's sitting in Sebastian's account is dormant. It's been dormant since he dropped out of CLC in 2020. How about the other kids? The money's been expended? There's no question that when Judge DeRue made the determination that he was not going to dismiss their petition for Uber Show cause, my client was not going to be held in contempt of court. He understood that the judge was interpreting it as he had to pay the money. So he paid the money without prejudice. Then we brought the motion to reform. Judge DeRue found that it was a justiciable issue, and we are here before the court today. Justice McClaren, do you have any other questions? Yes. Did I hear you correctly, sir, when you said once, I believe it was the boy defaulted, that they both would lose their ability to have recompense? The child, I believe it's a matter of law under 513G, as well as the parties' marital settlement agreements, that the parent's obligation to contribute terminates as a matter of law if the child fails to maintain a C average. Unless there is good cause shown. What do the parents contribute? Forgive me, Judge, I didn't hear your question. What did the parents contribute? In this situation? When did they contribute? The contribution was all the money that they had put in during the course of the marriage. Correct, because the money was then in the name of the children, correct? They were the beneficiaries at that point. As set out in the marital settlement agreement. That is correct, Judge. I have another question. Okay. I believe opposing counsel indicated that in the columns, the account was not listed as marital property. It was listed as something outside of it. Is that correct? It was on the marital bail sheet, but it was in a separate subcategory. Correct. He claims that because of its location and his interpretation that it was not a marital asset or listed amongst the marital assets, that the 55-45 percentage ratio should not be applied to it. You apparently think that it should. Why do you think that 55-45 should be applied to this as opposed to, say, 50-50? Because that would correct the mistake that the parties had. The parties didn't make a mutual mistake when they decided 55-45. They made a mutual mistake when they believed these marital assets would be exhausted to satisfy their 5-13 obligation. Because the 5-13 obligation is terminated, our motion to reform was based on the fact that a newly created marital asset exists because of that, and it should be divided consistent with the parties' global settlement agreement. I have no further questions. I'm sorry, and I have no further questions either. Counsel, thank you both for your arguments this morning. They've been most enlightening. We will be in recess until 1130 at our next oral argument, and decision will issue in due course.